UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-367-H

WALTERENE GRAY                                                                              PLAINTIFF

v.

WAL-MART STORES, INC. and
SANDIE COUSINS,                                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Walterene Gray, brings this case against her employer Wal-Mart Stores, Inc. ("Wal-Mart") and Sandie Cousins, her supervisor (collectively, "Defendants"), alleging religious, racial, and age discrimination, harassment, emotional distress, retaliatory discharge, wrongful termination, and tortious interference with a contractual relationship.  Now before the Court is Defendants' motion for partial dismissal or, in the alternative, for partial summary judgment on three of these claims.  For the reasons stated below, this Court will sustain the motion to dismiss as to the religious discrimination claim, the intentional infliction of emotional distress claim against Wal-Mart, and the tortious interference claim.  However, this Court will deny the motion to dismiss as to the intentional infliction of emotional distress claim against Cousins.

I.

The facts alleged in the Complaint are summarized as follows.  Gray, an African-American, worked for Wal-Mart as a maintenance crew member from 2006 until the date of her forced separation on January 3, 2010.  Cousins was an assistant manager and Gray's direct supervisor.  According to Gray, Cousins spoke disparagingly of African-American employees on

occasion. For example, Gray alleges that Cousins used derogatory language when proposing that the African-American employees participate in a plantation theme dinner reminiscent of the film, GONE WITH THE WIND (1939). Gray complained of Cousins' racial remarks to Wal-Mart management. Gray alleges that as a result of her complaint, her supervisors forced her to perform duties that required her to work from her hands and knees, and management subjected her to disciplinary "coachings" and conferences concerning her work.

In addition, Gray charges that Cousins disrespectfully regarded her religious beliefs. In one instance Cousins allegedly mandated that Gray no longer reference Jesus in her workplace discussions. Additionally, Gray alleges that Cousins once hid her Bible in order to prevent Gray from practicing her faith during her authorized break.

Eventually, Gray filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC charge") setting forth some of these details. On the EEOC charge, Gray indicated that she suffered discrimination based on race and age and endured retaliation for reporting the discrimination under Title VII of the Civil Rights Act and the Age Discrimination in Employment Act. The EEOC determined that the information provided did not establish a violation of these statutes, but refused to certify that Wal-Mart complied with the statutes. Following the EEOC determination, Gray filed the present lawsuit.

II.

A threshold issue here is the proper characterization of the motion before the Court. The Defendants designated this motion as a Rule 12(b)(6) motion to dismiss or as a motion for summary judgment under Rule 56. The Federal Rules of Civil Procedure provide that the defendant must assert the defenses enumerated in Rule 12(b) "before pleading if a responsive

pleading is allowed." Fed. R. Civ. P. 12(b). All such defenses are to be presented in a single motion if they were available at the time the initial motion was filed. Fed. R. Civ. P. 12(g)(2). Failure to comport with Rule 12(g)(2) in some instances will constitute a waiver of a defense. Fed. R. Civ. P. 12(h)(1).

Because Defendants' current motion is their second 12(b)(6) motion, filed after Defendants filed their Answer to the Complaint, Gray urges the Court to deny the motion on the grounds that Defendants waived the defenses. However, the current motion is based on the defenses asserted in Defendants' Answer, and as such, can be properly characterized as a motion for partial dismissal under Rule 12(b). Thus, the motion must be resolved on the pleadings.

Defendants' motion does rely in part on the EEOC charge, and the Court's use of this document is contrary to the general rule that a court may not consider matters outside the pleadings in a motion to dismiss. *See Hammond v. Baldwin*, 866 F. 2d 172, 175 (6th Cir. 1989). However, where a plaintiff's complaint refers to documents that are later attached to a defendant's motion to dismiss, those documents are considered part of the pleadings. *Weiner v. Klais & Co. Inc.*, 108 F.3d 86, 88-89 (6th Cir. 1997) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

To survive a 12(b)(6) dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The Court must view the allegations in the Complaint in the light

most favorable to Plaintiff Gray, treating all well-pleaded facts as true, but need not accept bare legal conclusions as definitive. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). Based on this standard, the Court proceeds to address the three substantive issues of the motion.

III.

Defendants seek dismissal of Gray's claim of religious discrimination on the grounds that she failed first to bring this claim to the EEOC. A plaintiff seeking relief under Title VII must bring his or her grievance to the EEOC, and only after first exhausting this potential remedy may a plaintiff proceed in federal court. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006) (internal citations omitted). This rule exists to encourage parties to enter into a voluntary settlement and to support the EEOC's investigatory and conciliatory role. However, because the employee filing the charge is often a lay complainant, the rule is not meant to be so rigid as to bar subsequent complaints due to procedural technicalities or imprecise wording. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). "As a result, the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph*, 453 F.3d at 731 (citing *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992))

Parties can exhaust their administrative remedies in two ways. First, and most typically, a Title VII plaintiff explicitly may state the claim in the EEOC charge. For example, Gray alleged a Title VII claim based on racial discrimination by checking the "race" box in the "discrimination based on" section on the EEOC charge. Second, a plaintiff may satisfy the EEOC exhaustion requirement "where facts related with respect to the charged claim would

prompt the EEOC to investigate a different, uncharged claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). "When the EEOC investigation of one charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred." *Id.*

Here, Gray failed to expressly indicate that she was making a religious discrimination charge. She did not check the "religion" box in the "discrimination based on" section, nor did she mention any facts in the narrative section of the EEOC charge tending to show religious-based discrimination. Regardless, Gray argues that the EEOC investigation elicited facts that satisfy the second means of achieving administrative exhaustion. Gray points to a partial statement Cousins provided to the EEOC that discusses Gray's frequent religious references at work as evidence of religious discrimination. However, the statement does not derogate Gray's religious beliefs and would not suggest to the EEOC that religious-based discriminatory actions had taken place.

In *Younis v. Pinnacle Airlines, Inc.*, the Sixth Circuit held that "the inclusion in the EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile work-environment claim for purposes of exhaustion." 610 F.3d at 362. In that case, the defendant terminated Younis, an Arab-American Muslim pilot, who then filed a claim for discrimination based on religion and national origin with the EEOC. In his complaint before the federal district court, Younis made discrimination claims *and* a hostile work environment claim. Younis alleged in his EEOC charge that co-workers made four comments over three years that supported a hostile work environment claim. The Court found that such evidence will not "support a subsequent, uncharged claim of hostile work environment 'unless the allegations in the

complaint can be reasonably inferred from the facts alleged in the charge.'" *Id. (*quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994)).

Like Younis, Gray did not mention any events tending to show religious discrimination in the workplace on the EEOC charge. The EEOC would not reasonably infer a religious discrimination claim from the facts actually presented in the EEOC charge.  For these reasons, the Court will dismiss Gray's religious discrimination claim.

## IV.

Gray also asserts an intentional infliction of emotional distress ("IIED") claim against both Defendants.  Defendants first object that the Kentucky Civil Rights Act ("KCRA") itself preempts each of these IIED claims.  The Court will treat this argument against each Defendant separately, beginning with the claim against Wal-Mart.

### A.

Kentucky adopted the Restatement (Second) of Torts §46 (1965) definition of IIED, which reads, "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984).  Gray also brought claims against Wal-Mart under the KCRA, an act intended to protect individuals "from humiliation, personal indignity, and other intangible injuries." *McNeal v. Armour & Co.*, 660 S.W.2d 957, 959 (Ky. 1983).  The KCRA specifically provides relief for humiliation and embarrassment as against *employers*.  *See* KRS § 344.230.

"Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute."

6

*Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). Based on this principle, the Kentucky Court of Appeals has held that a plaintiff's recovery under the KCRA subsumes a claim of IIED, because both the KCRA and the tort of IIED address the same unlawful act and provide similar remedies. *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 239 (Ky. Ct. App. 2001); *see also Messick v. Toyota Motor Mfg., Ky., Inc.*, 45 F. Supp. 2d 578, 582 (E.D. Ky. 1999). Thus, the claim against Wal-Mart may only be brought under the statute.

Gray's argument that she asserted the IIED claim in the alternative to the KCRA claims is contrary to Kentucky law; the KCRA claim does subsume the IIED claim regardless of whether the plaintiff inserted the phrase "in the alternative" in his or her complaint. Therefore, Gray's IIED claim against Wal-Mart must be dismissed.

B.

Defendants make a similar argument as to Gray's claim for IIED against Cousins individually–that Gray's KCRA claims subsume and preempt this claim as well. However, this argument presents a different analysis, and the Court can find no Kentucky cases to support Defendants' view.

The KCRA protects individuals against the unlawful acts of their employers. Chapter 344 of the Kentucky Code defines an employer as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks in the current or preceding calendar year *and an agent of such person* . . ." KRS § 344.030(2)(emphasis added). Despite the agency language, the Kentucky Court of Appeals determined that "individual agents or supervisors who do not otherwise qualify as employers cannot be held personally liable in their individual capacities under KRS Chapter 344." *Conner v. Patton*, 133 S.W.3d 491, 493

(Ky. Ct. App. 2004) (citing *Wathen v. Gen. Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997)). Without the option to sue supervisors in their individual capacities under the KCRA, the KCRA does not have the same effect as to IIED claims against an individual. For these reasons, therefore, the Court concludes that the KCRA cannot subsume causes of action against employee-supervisors.

V.

Next, the Court considers Defendants' argument that Cousins' conduct was not sufficiently outrageous to constitute intentional infliction of emotional distress. The elements of an IIED claim under Kentucky law are:

> (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe.

*Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2-3 (Ky. 1990) (citing *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984)). Defendants argue that Plaintiff cannot satisfy the second element of this tort.

The standard for outrageous and intolerable conduct is stringent under Kentucky law, because "[c]itizens in our society are expected to withstand petty insults, unkind words and minor indignities." *Kroger Co.v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). Adopting language from the Restatement (Second) of Torts §46 cmt. d (1965), the Kentucky Supreme Court explained that "[l]iability has only been found where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Ky.*, 796

S.W.2d at 3 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

The Court takes Gray's allegations as true and in the light most favorable to her. *Ewell v. Central City*, 340 S.W.2d 479, 480 (Ky. 1960). Gray relies on the following assertions to support her claim: 1) Cousins spoke disparagingly of African-American employees, including an incident wherein Cousins used the word "nigger" in connection with a discussion about the African-American employees participating in a plantation theme dinner reflecting the movie GONE WITH THE WIND; 2) Cousins referred to another African-American employee's hair as "nappy"; 3) Cousins hid Gray's Bible to prevent her from reading it during her break period; and 4) Cousins demanded that Gray acknowledge servitude to non-managerial co-workers.

Cousins argues that these racial comments cannot be the basis for an IIED claim, because they were merely petty insults and minor indignities. *See Kroger Co.*, 920 S.W.2d at 65. However, the word "nigger" "is a universally recognized opprobrium, stigmatizing African-Americans because of their race." *Lovings v. Akzo Nobel Coatings, Inc.*, No. 2002-CA-001160-MR, 2003 WL 21991540, at *4 (Ky. Ct. App. Aug. 22, 2003) (quoting *Brown v. E. Miss. Electric Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)). The isolated and infrequent use of derogatory racial terms must be taken in light of the context spoken to determine whether those statements rise to the level of outrage required for a IIED claim. In addition to Cousins' use of the word "nigger" when referring to and in the presence of her African-American employees, Gray alleges a number of other instances of derogatory statements and inappropriate actions directed toward Gray in her Complaint. These too must be considered in conjunction with the racial slurs when deciding the degree of impropriety exhibited by Cousins.

The difficulty with this analysis is that Cousins may have used the derogatory term on

only one occasion. On the other hand, any such use could be deemed extremely offensive and outrageous. At this stage, the circumstances surrounding Cousins' statements and behavior are unclear. Whether Cousins intended to cause emotional distress is also uncertain. When taken as true, however, Gray's allegations potentially present intentional conduct which many would view as intolerable in civilized society and tantamount to an intentional infliction of emotional distress.

## VI.

Finally, Defendants seek dismissal of Plaintiff's claim for tortious interference with a contractual relationship. Under Kentucky law, tortious interference occurs when one party wrongfully induces another not to perform or enter into a contract or a business relationship with a third party. *Brett v. Media Gen. Operations, Inc.*, 326 S.W.3d 452, 459 (Ky. Ct. App. 2010). This requires three parties. Gray asserts that Cousins interfered with her contractual employment relations with Wal-Mart. However, under Kentucky law, agents of a party to a contract, acting within the scope of their employment, are considered an arm of that party such that the agent cannot interfere with that party's contract. *Harstad v. Whiteman*, 338 S.W.3d 804, 814 (Ky. Ct. App. 2011).

It is undisputed that Cousins was an employee of Wal-Mart and acting within the scope of her employment when the alleged discriminatory acts took place. As such, Cousins was acting as an agent on behalf of Wal-Mart during the period of her supervision over Gray, and thus Cousins and Wal-Mart are considered the same party. Without a third party to interfere with Gray's contract with Wal-Mart, Gray's tortious interference claim fails as a matter of law.

Even so, Gray argues that she can maintain a tortious interference claim against Cousins,

referencing two Michigan Court of Appeals cases in which the Court held that a tortious interference claim is actionable on an at-will employment contract. *Feaheny v. Caldwell*, 437 N.W.2d 358, 304 (Mich. Ct. App. 1989); *Patillo v. Equitable Life Assurance Soc'y of the U.S.*, 502 N.W.2d 696, 700 (Mich. Ct. App. 1992) (relying on *Feaheny* for the same point of law). Two federal district courts have refused to follow *Feaheny v. Caldwell* on grounds that "the basic premise of this reasoning [in *Feaheny*] is flawed." *Sahadi v. Per-Se Techs., Inc.*, 280 F. Supp. 2d 689, 702 (E.D. Mich. 2003) (quoting *Carlson v. Westbrooke Serv. Corp.*, 815 F. Supp. 1019, 1024 n.2 (E.D. Mich. 1992)). This Court agrees. "[T]he cause of action for tortious interference with a contract 'was never intended and does not apply to the relationship between employer and employee.'" *Carlson*, 815 F. Supp. at 1024 (quoting *Tash v. Houston*, 254 N.W.2d 579, 575-76 (Mich. Ct. App. 1977) (Beasley, J., dissenting)). For these reasons, the Court will dismiss Gray's claim for tortious interference with a contractual relationship.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is DENIED IN PART as to Plaintiff's intentional infliction of emotional distress claim against Defendant Cousins.

IT IS FURTHER ORDERED that Defendants' motion to dismiss is SUSTAINED IN PART and Plaintiff's claims for religious discrimination; intentional infliction of emotional distress as against Defendant Wal-Mart; and tortious interference with contractual relations are DISMISSED WITH PREJUDICE.

cc:     Counsel of Record